### IN THE

# SUPREME COURT

### OF THE

## STATE OF MISSOURI,

### OCTOBER TERM, 1853, AT ST. LOUIS.

~~~~~~~~~~~~~~~~~~~~~~~

BYRON, Appellant, *vs.* SARPY *et al.*, Respondents.

1. It is well settled that no claim was confirmed by the act of 1812, which had been abandoned before that date.
2. A confirmation by the act of June 13th, 1812, vested the title in the husband alone, as the head of the family, leaving the rights of the wife to be ascertained by the terms of the marriage contract, if any existed, or the laws regulating dower or community.
3. Where the husband abandoned his possession prior to June 13th, 1812, neither he nor his wife had any claim upon which the act could operate. The abandonment of the husband was the abandonment of the wife.

*Error to St. Charles Circuit Court.*

*Delafield* and *Morrow*, for appellant. The land in dispute was inhabited, cultivated and possessed by John, Nicholas and Theresé St. André, in common, prior to December 20th, 1803. By the Spanish law, Theresé was possessed of an undivided moiety of the interest of her husband, Nicholas. This right was confirmed to her and to her vendee by the act of June 13th, 1812. The defendants can claim nothing under the deed of Cerré.

That deed amounted to nothing but an abandonment of possession, and the St. Andrés could claim nothing under it. They acquired a title by their subsequent labor, and the confirmation was to them in common. It was ganancial property. The Spanish law expressly declares, "that the husband cannot alienate his property maliciously (con malicia) and in fraudulent diminution (en fraude) of the ganancias." The court, then, certainly erred in rejecting the testimony offered to show that the deed of 1808 was made and contrived fraudulently between the parties thereto, to defeat the wife's claim.

Again, the court erred in excluding the evidence offered to show that it was a custom which prevailed in the post and district of St. Louis, from 1800 to 1816, and which was always recognized by the inhabitants, that on any marriage there, all property owned by either party to the marriage entered into the community, and neither the husband nor wife could alien more than a moiety thereof, without the consent of the other.

*E. Bates*, *T. T. Gantt* and *F. A. Dick*, for defendant in error. 1. Therесé St. André had no interest whatever in the land in question, either before or after the date of the deed from J. and N. St. André and Therесé, to Chouteau. The origin of the right of J. and N. St. André is shown to be by purchase from Cerré, before the marriage of Nicholas and Therесé. If the deed to Chouteau had not been made, and the three St. Andrés had continued to live upon the lot until June 13, 1812, the act of that date would have confirmed the title to Jean and Nicholas and not Therесé. She had no claim to the lot except as the wife of Nicholas ; and as such, she was under authority and could not have possession. If she had possession, so had every child of the family. The act of 1812 gives title to those only who, at the date of the act, had a subsisting right, title or claim to a lot which had been inhabited, cultivated and possessed before the change of government ; and Therесé had no such right, title or claim. 2. The confirmation by the act of 1812 enures to the benefit of Berthold and not to the benefit of those under whom he claims. *Strother* v. *Lucas*, 12 Pet. *Mont-*

*gomery* v. *Landusky*, 9 Mo. Rep. 705. *Landes* v. *Perkins*, 12 Mo. Rep. 238. The certificate of confirmation is to Berthold, and this is proof of his title, conclusive unless rebutted. *Montgomery* v. *Landusky*, 9 Mo. Rep. 705. *Macklot* v. *Dubreuil*, ib. 477. *McGill* v. *Somers*, 15 Mo. Rep. 80. 3. Theresé had no claim under the law of community, because, first, the lot did not, under the circumstances, enter into the community, and second, if it did, her husband had power to sell it, as he did sell it, to Pierre Chouteau, in 1808. Besides, the law of community had no effect here after 1807. *Riddick* v. *Walsh*, 15 Mo. Rep. 519.

SCOTT, Judge, delivered the opinion of the court.

This was an action in the nature of an ejectment, to recover possession of a lot of ground in the city of St. Louis, taken, by change of venue, to St. Charles county. The following are the facts of the case. On the 16th of June, 1802, Gabriel Cerré, conveyed the lot in controversy to John and Nicholas St. André, (brothers,) unmarried. After the said conveyance the said Nicholas and John claimed, inhabited, cultivated and possessed the said lot of ground, which was a village lot in St. Louis. On the 8th day of February, 1803, Nicholas St. André intermarried with Theresé Barbrough. The marriage took place in the village of St. Louis, of which both the parties were resident. After the marriage, the said John and Nicholas St. André and his wife inhabited, cultivated and possessed the lot, claiming the same until the 30th of April, 1808, when the said John and Nicholas conveyed the same to Pierre Chouteau. Nicholas St. André died on the 19th of January, 1822. The defendants are possessed of all the right, title and interest vested in Chouteau by the deed of John and Nicholas St. André, of the 30th April, 1808 ; and the plaintiff is possessed of all the right, title and interest which remained in Theresé St. André, the wife of Nicholas, after the said deed of the 30th of April, 1808. Bartholemew Berthold being the

vendee of Pierre Chouteau, claimed the lot as deriving title from Nicholas St. André, and it was confirmed to him by the recorder of land titles, by the provisions of the act of congress of the 26th May, 1824. The plaintiff, on the trial, offered evidence to show that, by a custom which prevailed in St. Louis from 1800 to 1816, all the property owned by either party to a marriage, entered into the community, and that neither the husband nor wife could alienate more than one moiety of it, without the consent of the other; and also, offered evidence to prove that Theresé, the wife, refused to sign the deed to Chouteau, and that the same was made and contrived fraudulently between the parties thereto, to defeat the claim and interest of the said Theresé thereto. This evidence was excluded by the court, to which an exception was taken. The cause was then brought to this court.

1. In the consideration of this cause, the fact must be borne in mind, that there was no grant or concession of the lot in dispute to any one by the French or Spanish government. There was no inchoate right to it, such as was recognized by the act of congress of 2d March, 1805, or any law prior to the 13th of June, 1812. It does not appear that Gabriel Cerré, from whom the St. Andrés derived title, had any grant or concession. Indeed, it was maintained by the plaintiff that Cerré's deed amounted only to an abandonment of his possession of the lot. The earliest act of congress which can affect this claim, is that of the date last aforesaid, which confirmed to the inhabitants of the village of St. Louis the rights, titles and claims to village lots, which had been inhabited, cultivated or possessed prior to the 20th of December, 1803. In the construction of this act of congress, it has always been maintained, that an inhabitant, in order to be confirmed in his claim, must have had a claim in existence at the date of the act. If he occupied or possessed, prior to the 20th of December, 1803, and afterwards, yet if before the 13th of June, 1812, he ceded away or abandoned his claim, he was not entitled to the benefit of the act. Now if the deed of Cerré, in 1802, was an

abandonment of his claim, why was not the deed of the St. Andrés to Chouteau, in 1808, equally an abandonment of their claim? They had no more right at that time than Cerré had in 1802. At the date of their transfer to Chouteau, no act of congress had passed which recognized in them any claim, right or interest in the lot. They had nothing but their bare possession, which they, in terms, conveyed and abandoned to Chouteau. There is no evidence on the subject, and we must presume that their conduct corresponded with their deed, and that they abandoned their possession when they executed the conveyance.

2. The argument was made for the plaintiff, that by the marriage, in 1803, between Nicholas and Therese, she, by the law of community then prevailing, became entitled to one half of the interest of her husband in the lot, and that she, together with Nicholas, being in possession prior to the 20th of December, 1803, the donation conferred by the act of the 13th of June, 1812, enured to her benefit in proportion to her interest in the lot, under the law of community. We cannot yield to this view of the subject. It has never been supposed that, where the husband and wife lived together on the same lot, prior to the 20th December, 1803, that the act of the 13th June, 1812, gave to the wife one half of the lot, or that it was a donation to be equally divided between them. It has been the received opinion that the husband, as the head of the family, took the title, leaving the rights of the wife to be ascertained by the terms of the marriage contract, if any existed, or the laws regulating dower or community. This view of the subject harmonizes with our system of law, by which the legal existence of the wife is merged in that of the husband, and is so obvious that, had the legislative power designed an equal participation by the wife in the bounty, it would have been so expressed in words. If the act was a donation to the husband, then, by a well established principle of the law of community, lands granted by the sovereign during marriage,

do not enter into the community, but belong exclusively to the individual to whom the grant is made. *Gayaso* v. *Garcia*, 1 Mar. N. S. 334. *Frique* v. *Hopkins*, 4 Mar. N. S. 220. In Louisiana, where the Spanish law prevailed, this principle was applied to donations made by the government of the United States. *Hughey* v. *Barrow*, 4 Lou. Ann. R. 250.

3. When the husband conveyed to Chouteau and yielded the possession, he having no legal right, his wife's right, if she had any, were abandoned together with his own. This is undoubtedly the law under our system of jurisprudence, and we find the courts of Louisiana, in cases governed by the Spanish law, maintaining a similar doctrine. In the case of *Frique* v. *Hopkins*, 4 Mar. N. S. 220, it is said that the father, as the head of the family, has a right to select his place of residence, and his wife is bound to follow him. No deed was necessary to effect an abandonment of a claim. It was an act that could be as effectually performed without as with writing. Whether she was a party to the deed was a matter of perfect indifference. If, then, the husband abandoned his claim prior to the 13th of June, 1812, and if the fate of his wife's rights was entwined with his, they, too, were gone, and there was, consequently, no claim in him or her on which the act could operate at the date of its passage.

By this view of the case, we are relieved from the task of expressing an opinion in relation to the law as to the admissibility of the evidence offered on the part of the plaintiff, as well as from the investigation of the rights of Theresé, as widow, under the law of community, which, by some, is supposed to have had an existence here at the date of the act of the 13th of June, 1812.

This action is in the nature of an ejectment, the plaintiff seeking to obtain possession of the premises from the defendants. Their possession is a good defence to the action until a right to recover is made out by the plaintiff. Under these circumstances we do not consider that we are called upon to enter into an

examination of their title or to express any opinion in relation to its validity.

Judge Ryland concurring, the judgment is affirmed. Judge Gamble did not sit in this case.